STATE *v.* JAMES KELLEY.

January Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 23, 1912.

*Dogs—At Large Without Collar—P. S. 5623-5629—Killing by*
*Officer—Justification—Offence of Owner—"Keeping"—*
*"Maintain"—Construction of Statutes.*

P. S. 5663 justifies a constable in killing a dog found at large without
the prescribed collar, which the dog had just lost, regardless of
whether the owner or keeper knew of the loss or was to blame
therefor.

But where a dog was found at large without the prescribed collar which
he had just lost without the knowledge or fault of the owner, the
owner was not liable to the penalty imposed by P. S. 5629 on "a
person keeping a dog contrary to the foregoing provisions," for
the word "keeping" as therein used is synonymous with main-
taining, and implies some degree of permanence.

In determining the meaning of a particular word in a statute, regard
must be had to the nature of the subject-matter and to the inten-
tion of the Legislature as evidenced by the whole provision.

INFORMATION charging the respondent with keeping an un-
licensed dog and allowing it to go at large without a collar.
Plea, not guilty. Trial by court, in the city court of the city of
Barre, *Scott, J.*, on an agreed statement of facts. Judgment,
guilty; and sentence thereon. The respondent excepted. The
opinion states the case.

*M. M. Gordon* for the respondent.

*J. Ward Carver*, State's Attorney, for the State.

MUNSON, J. The licensing of dogs is required and regulated
by sections 5623 to 5628 of the Public Statutes. One of these
sections provides that the owner or keeper of a licensed dog

"shall cause it to wear a collar distinctly marked with the name of the owner or keeper." Section 5629 provides that "a person keeping a dog contrary to the foregoing provisions" shall be fined as therein stated. The respondent has been adjudged guilty upon a complaint which charges that he did not cause his dog to wear a collar, but that said dog ran at large without a collar. The case was heard upon an agreed statement, from which the following facts appear.

The respondent held an unexpired license for the dog, which he obtained by a full compliance with all the requirements of the statute. He placed upon the dog a collar which was properly marked, and which he never allowed to be removed. During the respondent's absence from home, the dog followed a member of his family to the city of Barre, a distance of about one-half mile, where it was killed by the constable because it was without a collar. It afterwards appeared that the dog lost its collar on its way to the city. The respondent had no knowledge of the loss of the collar, and no opportunity to replace it before the dog was killed. The collar had been lost off once before this, but without the knowledge of the respondent.

The want of a collar justified the officer in killing the dog. P. S. 5635; *McDerment* v. *Taft*, 83 Vt. 249, 75 Atl. 276, 138 Am. St. Rep. 1083. But the condition which justified the killing of the dog did not necessarily subject its owner to the fine. The State relies upon the general doctrine that when a statute makes an act penal without reference to knowledge or intent, ignorance of the fact and freedom from criminal intent are no protection. *State* v. *Tomassi,* 67 Vt. 312, 31 Atl. 780; *State* v. *Ward,* 75 Vt. 438, 56 Atl. 85. The respondent's brief ignores these cases, and stands solely upon the claim that there can be no criminal liability without a criminal intent. But the case invites further consideration; for the language of the statute may suggest some inquiry not disposed of by the cases cited.

The requirement is that the owner cause the dog to wear a collar. The offence lies in keeping a dog contrary to this provision; that is, in keeping a dog without a collar. The question is whether the failure to have the dog wear a collar on this occasion, under the circumstances presented by the statement of facts, was a keeping of the dog without a collar within the meaning of the statute. If the respondent is relieved from liability

on the case presented, it must be by force of the word "keeping." But in determining the effect of this word regard must be had to the nature of the subject-matter, and the intention of the Legislature as evidenced by the whole provision.

If we look mainly to the word "keeping" it may fairly be argued that the respondent is not within the prohibition. "Keeping," as applied to an existing relation or condition, implies some degree of permanence. "Keep" is often used as synonymous with "maintain," and one cannot be said to maintain a condition which comes upon him by accident and is remedied at the earliest possible moment. In this view, the ownership of the dog from the time its collar was lost until it was killed, without a possibility of the collar being replaced, would not constitute a keeping of the dog without a collar. A majority of the Court take this view of the statute, and consider that the conviction was erroneous.

*Exceptions sustained, judgment and sentence vacated, and respondent discharged.*

MUNSON, J., dissenting. The statute requires the owner of a dog to cause it to wear a collar. The owner fails to meet this requirement if he provides a collar that can be and is "lost off." The respondent's lack of knowledge that this collar could be and had been lost off is no excuse. Legislation of this class requires an owner to know, and treats him as if he did know. The collarless condition of this dog was not cast on the respondent by accident. His failure to provide a suitable collar lay back of the accident.